# UNITED STATES DISTRICT COURT
for the
Northern District of California

| United States of America | ) |
|---|---|
| v. | ) |
| TRACY MICHAEL MAPES | ) Case No. |
| | ) |
| Defendant(s) | ) |

CR 19 70752 MAG

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **November 26, 2017** in the county of **Santa Clara and Alameda** in the
**Northern** District of **California**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 49 U.S.C. § 46307 | Violation of National Defense Airspace. |

This criminal complaint is based on these facts:

Please see attached affidavit of Reggie Lee

Approved as to form: Scott Simeon, AUSA _/s/ Scott Simeon_

☑ Continued on the attached sheet.

/s/
Complainant's signature

DOT OIG Special Agent Reggie Lee
Printed name and title

Sworn over the telephone and signed by me
pursuant to Fed. R. Crim. P. 4.1 this **14** day of
May 2019
10:53 a.m.
Date: **5/14/2019**

Judge's signature

City and state: San Jose, CA        Hon. Nathanael Cousins, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT FOR CRIMINAL COMPLAINT

I, Reggie Lee, being duly sworn, depose and state:

1. I am a Special Agent with the United States Department of Transportation Office of Inspector General (DOT OIG), in San Francisco, California, and have been since February 2017. Previously, from March 2015 to January 2017, I was a Special Agent with the United States Air Force Office of Special Investigations. As part of my training as a Special Agent, I completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center.

2. The information in this affidavit is based on my personal knowledge, my review of documents and evidence collected during the investigation, my training and experience, and information obtained from witnesses and from other agents and agencies. Because this affidavit is submitted for the limited purpose of establishing probable cause in the application of a criminal complaint, it does not set forth each and every fact that I or others have learned during the course of this investigation.

### Definitions

3. Title 14 ("Aeronautics and Space"), Code of Federal Regulations, Section 1.1 defines the following terms used in this affidavit:

   a. "Aircraft" means a device that is used or intended to be used for flight in the air.

   b. "Unmanned aircraft" means an aircraft operated without the possibility of direct human intervention from within or on the aircraft.

   c. "Small unmanned aircraft" means an unmanned aircraft weighing less than 55 pounds on takeoff, including everything that is on board or otherwise attached to the aircraft.

   d. "Small unmanned aircraft system" (small UAS) means a small unmanned aircraft and its associated elements (including communication links and the components that control the small unmanned aircraft) that are required for the

safe and efficient operation of the small unmanned aircraft in the national airspace system.

e. "Model aircraft" means an unmanned aircraft that is: (1) capable of sustained flight in the atmosphere; (2) flown within visual line of sight of the person operating the aircraft; and (3) flown for hobby or recreational purposes.

**Background and Applicable Law**

4. The Federal Aviation Administration (FAA) is an agency within the United States Department of Transportation responsible for the control and use of navigable airspace within the United States. The FAA created the National Airspace System (NAS) to protect persons and property on the ground, and to establish a safe and efficient airspace environment for civil, commercial, and military aviation. In the FAA Modernization and Reform Act of 2012, the FAA was charged with safely integrating unmanned aircraft systems (UAS), commonly referred to as "drones," into the NAS.

5. Title 49 ("Transportation"), United States Code, Section 40103(b)(3) requires the Administrator of the FAA, in consultation with the Secretary of Defense, to establish areas in the airspace the Administrator decides are necessary in the interest of national defense; and by regulation or order, restrict or prohibit flight of civil aircraft that the Administrator cannot identify, locate, and control with available facilities in those areas. A temporary flight restriction (TFR) is a regulation that temporarily restricts certain aircraft from operating within a defined area in order to protect persons or property in the air or on the ground.

6. Pursuant to § 40103(b)(3), on July 20, 2017, the FAA issued a TFR that prohibits all aircraft—including small unmanned aircraft—from operating within a three nautical mile radius of any stadium with a seating capacity of 30,000 or more people during, among other events, regular or postseason National Football League (NFL), NCAA Division I football, and Major League Baseball games. The TFR, also referred to as the "stadium TFR," takes effect one hour before a qualifying event begins and remains in effect until one hour after the event ends.

Pursuant to § 40103(b)(3), the FAA classifies the airspace defined in the stadium TFR as "National Defense Airspace."

7. Title 49, United States Code, Section 46307 prohibits a person from knowingly or willfully violating 49 U.S.C. § 40103(b)(3), or a regulation prescribed or order issued under § 40103(b)(3).

### Facts Supporting Probable Cause

8. TRACY MICHAEL MAPES ("MAPES") resides in North Highlands, California.

9. On February 1, 2016, MAPES registered himself and his model aircraft on the FAA UAS registration website. On the website was a page titled "Acknowledgement of Safety Guidance." In order to register, MAPES was required to check a box on that page stating, "I have read, understand and intend to follow the safety guidance." The page lists the following safety guidance:

   a. I will fly below 400 feet
   b. I will fly within visual line of sight
   c. I will be aware of FAA airspace requirements: faa.gov/go/uastfr
   d. I will not fly over groups of people
   e. I will not fly over stadiums and sports events
   f. I will not fly near emergency response efforts such as fires
   g. I will not fly near other aircraft
   h. I will not fly under the influence

After MAPES' registration, the FAA provided MAPES with a registration certificate that reiterated the safety guidelines for operating a UAS.

### *November 26, 2017: Levi's Stadium*

10. Levi's Stadium is located in Santa Clara, California, and is home of the San Francisco 49ers, a professional football team in the NFL. Levi's Stadium has a seating capacity of 68,500 people, and is located within five miles of both San Jose International Airport and Moffett Federal Airfield.

3

11. On November 26, 2017, the San Francisco 49ers hosted the Seattle Seahawks at Levi's Stadium for a 1:05 p.m. NFL game. During the game, at approximately 2:10 p.m., MAPES intentionally navigated his small unmanned aircraft directly over Levi's Stadium.

12. MAPES did not fly the aircraft within his visual line of sight. MAPES had retrofitted a baseball helmet to hold an Apple iPad with a wireless connection to the aircraft's onboard camera. Using this configuration, MAPES navigated the aircraft with a first-person view from the onboard camera via the iPad.

13. MAPES also modified the aircraft by adding a compartment underneath its belly to carry a payload. While flying over the spectators at Levi's Stadium, the aircraft carried dozens of flyers. MAPES opened the compartment remotely to drop these flyers onto the spectators in the stadium:



*November 26, 2017: Oakland Coliseum*

14. After piloting his small unmanned aircraft over Levi's Stadium, MAPES drove to Oakland, California, near the Oakland-Alameda County Coliseum ("Coliseum"), home of the Oakland Raiders, a professional football team in the NFL. The Coliseum has a seating capacity of 63,000 people.

15.     On November 26, 2017, the Oakland Raiders hosted the Denver Broncos at the Coliseum for a 1:25 p.m. NFL game. During the game, at approximately 4:13 p.m., MAPES intentionally navigated his small unmanned aircraft directly over the Coliseum.

16.     MAPES did not fly the aircraft within his visual line of sight. As before, MAPES navigated the aircraft with a first-person view from the UAS's onboard camera transmitted to his iPad.

17.     As before, while flying over the spectators at the Coliseum, the aircraft carried dozens of "Red 'X' Society" flyers. MAPES again opened the UAS compartment remotely to drop these flyers onto the spectators in the stadium.

18.     Alameda County Sheriff's Office deputies tracked the UAS approximately one-half mile as it returned from the Coliseum to the vicinity of 5901 Coliseum Way. When the deputies arrived at that location, they found MAPES wearing the retrofitted helmet and using the attached iPad to pilot the aircraft. The drone then descended and landed next to MAPES.

19.     When deputies asked MAPES if he had permission from the Raiders or the NFL to fly over the stadium, he responded, "Probably not." MAPES also admitted to having come from the 49ers game. MAPES was later interviewed by a detective of the Santa Clara Police Department. MAPES stated that he believed his actions of flying a UAS over the stadiums and distributing his message outweighed any repercussions.

*Subsequent Investigation*

20.     I have conducted a records check with the FAA in connection with this matter and have confirmed that MAPES did not have authorization to fly a UAS over either Levi's Stadium or the Coliseum on November 26, 2017.

21.     I have reviewed MAPES' Facebook posts, including posts where he referred to himself as an "NFL Drone Pilot" for his UAS stadium flights on November 26, 2017. When a Facebook user asked MAPES why he referred to himself as an "NFL Drone Pilot," MAPES answered, "2 NFL Games, 1 Day." When another Facebook user wrote, "Extremes like this

remind me of several bombings and mass shootings. If there were only warning signs." MAPES responded: "Well? ... You just got one buddy."

22. I have reviewed several public videos which were posted on YouTube by MAPES under the username "news1st." The videos contain, among other things, footage of MAPES flying a drone over Sacramento, California, and dropping flyers.

23. The investigation further revealed that MAPES authored an online article titled, "Direct Action – Modern Warfare – Tactics and Results." In the article, MAPES discusses his reasons for creating the "Red 'X' Society," as well as his methods and goals. MAPES writes:

> The General premise of the Red 'X' Society is that participation is the Only Requirement for Membership. There are no Identification Cards, or Meetings. Only Target Marking, and Direct Action.
>
> Target Marking is the First Level of Combating Negative Behaviors that are used by the 'Enemy'.
>
> ....
>
> Direct Action List
>
> This could include any of the Following:
>
> 1st Level Offense, Marking of Property with the Red 'X'
>
> 2nd Level Offense, Nail Drop.
>
> 3rd Level Offense, Arson/Property Destruction.
>
> 4th Level Offense, Homicide.

### *Forensic Media Analysis*

24. Pursuant to a warrant issued by this Court, DOT OIG computer crimes agents conducted a forensic media analysis of the data stored in MAPES' UAS. The forensic media analysis of the flight log data contained in the UAS's internal Secure Digital (SD) memory card confirmed that the UAS was flown directly over Levi's Stadium and the Coliseum during NFL games on November 26, 2017.

25. Agents also acquired video and images contained in the external SD card from the UAS's onboard camera system, including:

a. Video of flyers being dropped over Levi's Stadium.



b. Video of MAPES piloting the UAS outside Levi's Stadium.



c. Video of flyers being dropped over the Coliseum.



d. Video of MAPES piloting the UAS outside the Coliseum.



## Conclusion

26. Based on the foregoing, I respectfully submit that probable cause exists to believe that TRACY MICHAEL MAPES has violated Title 49, United States Code, Section 46307 by knowingly and willfully violating National Defense Airspace.

/s/
REGGIE Y. LEE
Special Agent
United States Department of Transportation
Office of Inspector General

Sworn over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 on this __14__ day of May 2019  10:53 a.m.

NATHANAEL M. COUSINS
United States Magistrate Judge

Summons authorized

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

**BY:** [X] COMPLAINT    [ ] INFORMATION    [ ] INDICTMENT    [ ] SUPERSEDING

**Name of District Court, and/or Judge/Magistrate Location:** NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

*FILED MAY 14 2019, CLERK, U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE*

## OFFENSE CHARGED

49 U.S.C. § 46307- Violation of National Defense Airspace.

[ ] Petty
[ ] Minor
[X] Misdemeanor
[ ] Felony

**PENALTY:**
- Maximum Prison Term: 1 year
- Maximum Fine: $100,000
- Supervised Release: 1 year
- Special Assessment: $25

## DEFENDANT - U.S

▶ TRACY MICHAEL MAPES

**DISTRICT COURT NUMBER:** CR 19 70752 MAG

## PROCEEDING

**Name of Complaintant Agency, or Person (& Title, if any):** DOT Special Agent Reggie Lee

[ ] person is awaiting trial in another Federal or State Court, give name of court _____

[ ] this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District _____

[ ] this is a reprosecution of charges previously dismissed which were dismissed on motion of:
    [ ] U.S. ATTORNEY    [ ] DEFENSE
**SHOW DOCKET NO.** _____

[ ] this prosecution relates to a pending case involving this same defendant
**MAGISTRATE CASE NO.** _____

[ ] prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under _____

**Name and Office of Person Furnishing Information on this form:** DAVID L. ANDERSON
[X] U.S. Attorney    [ ] Other U.S. Agency

**Name of Assistant U.S. Attorney (if assigned):** AUSA SCOTT SIMEON

## DEFENDANT

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) [X] If not detained give date any prior summons was served on above charges ▶ _____

2) [ ] Is a Fugitive

3) [ ] Is on Bail or Release from (show District) _____

**IS IN CUSTODY**
4) [ ] On this charge
5) [ ] On another conviction    [ ] Federal [ ] State
6) [ ] Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution _____

Has detainer been filed? [ ] Yes [ ] No    If "Yes" give date filed _____

**DATE OF ARREST** ▶ Month/Day/Year _____

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY** ▶ Month/Day/Year _____

[ ] This report amends AO 257 previously submitted

## ADDITIONAL INFORMATION OR COMMENTS

**PROCESS:**
[X] SUMMONS    [ ] NO PROCESS*    [ ] WARRANT    Bail Amount: _____

If Summons, complete following:
[X] Arraignment    [X] Initial Appearance
Defendant Address: _____

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Date/Time: 1:30pm    Before Judge: Duty Magistrate

**Comments:** June 4, 2019

*Approved /s/* (signature)